Michael A. BROADWAY,
Petitioner–Appellee,

v.

UNITED STATES of America,
Respondent–Appellant.

No. 96–2538.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1996.

Decided Jan. 13, 1997.

James I. Marcus (argued), Williams & Marcus, Chicago, IL, for Petitioner-Appellee.

Richard N. Cox, Office of the United States Attorney, Urbana Division, Urbana, IL, for Respondent-Appellant.

Before POSNER, Chief Judge, and CUDAHY and DIANE P. WOOD, Circuit Judges.

CUDAHY, Circuit Judge.

When Michael Broadway was arrested in 1990, he had 50 packets of crack cocaine in one pants pocket and a gun in the other. In addition to a drug offense, a jury convicted him of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). He now argues that a recent Supreme Court decision, *Bailey v. United States,* — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), invalidates his firearms conviction. *Bailey* refined some inferior courts' (including this one's) loose interpretation of what "using or carrying" a firearm under § 924(c)(1) means. Mr. Broadway says that he was not "carrying" the gun, at least not within the post-Bailey meaning of § 924(c)(1), and he filed a motion under 28 U.S.C. § 2255 to this effect. The district court agreed. We do not, and we reverse.

## I. Facts and procedural posture

The story of Mr. Broadway's arrest is undisputed. Police officers John Murphy and Wayne Meeker entered a crime-ridden housing project in Champaign, Illinois, where they saw Mr. Broadway and another man lying on the stairs. The officers approached the two men. Appearing drugged, Mr. Broadway tried to get up but staggered against the wall and sank down again. Detective Murphy asked Mr. Broadway for identification, but before Mr. Broadway reached for his pocket, Detective Murphy decided to pat Mr. Broadway down. Mr. Broadway obeyed the detective's instructions to face the wall and hold his hands out.

Detective Murphy noticed the corner of a plastic bag jutting out of Mr. Broadway's left front pants pocket. The detective pulled the bag out; inside were some 50 small bags containing a white chunky substance that he believed to be crack cocaine. When he continued the frisk, he felt a hard object in Mr. Broadway's other front pocket and withdrew a .25 caliber pistol. Lab analysis confirmed that the white substance was indeed crack.

A jury convicted Mr. Broadway of two crimes: the firearms violation at issue here under 18 U.S.C. § 924(c)(1), and possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The court sentenced Mr. Broadway to 41 months of imprisonment for drug possession, to be followed by 60 more months for the firearms violation. This court has already heard Mr. Broadway's direct appeal, which challenged the district court's denial of his motion to suppress evidence. We affirmed in an unpublished order.

With his 41 months for drug possession behind him and in the midst of his 60 months for the firearms violation, Mr. Broadway now presses his collateral attack under § 2255. He contests only the firearms conviction. The district court granted his motion on June 21, 1996 and ordered that he be freed immediately. The government appeals. We have jurisdiction to hear the appeal under 28 U.S.C. § 1291, and we review the district court's decision de novo. *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir.1996).

## II. Barred grounds for petitioner's § 2255 motion

The district court vacated Mr. Broadway's firearms conviction on June 21, 1996, explaining only that "*U.S. v. Bailey* was applicable and that the defendant should be released." Dist. Ct. Amended Order (citation omitted). We turn to *Bailey* and Mr. Broadway's § 2255 petition to illumine the court's rationale. (Petitioner repeats on appeal the same arguments that he made to the district court.)

At the time of Mr. Broadway's trial, this circuit employed a broad construction of "to use" that came close to being a synonym for "to possess." *United States v. Robinson,* 96

F.3d 246, 250 (7th Cir.1996). In *Bailey*, the Supreme Court construed the word "use" much more narrowly. It ruled that "sec. 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." —— U.S. at ——, 116 S.Ct. at 505. This element of "active employment" thus rendered possession-oriented definitions of "use" defunct.

*Bailey* consolidated two appeals from the D.C. Circuit. In one case, police found cocaine in a car's passenger compartment and then found a 9–mm. pistol "inside a bag in the locked car trunk." *Id.* at ——, ——, 116 S.Ct. at 504, 509. In the other, police discovered during a raid of the defendant's apartment an unloaded .22–caliber Derringer "in a footlocker in a bedroom closet." *Id.* at ——, ——, 116 S.Ct. at 504, 509. Equipped with the new "active employment" definition for "using" a firearm, the Court ruled that in neither case could the defendant be said to have used the gun under § 924(c)(1).

 Mr. Broadway's petition challenges his firearms conviction on grounds common to the twenty or so post-*Bailey* cases that various defendants have brought before this Court: a flawed jury instruction and insufficiency of evidence. *See Robinson*, 96 F.3d at 250; *United States v. Gonzalez*, 93 F.3d 311, 319 (7th Cir.1996). Yet unlike most of these cases, Mr. Broadway's two principal attacks turn out to have little if anything to do with *Bailey*. This is a grave weakness in his petition. For, also unlike the bulk of the post-*Bailey* cases, Mr. Broadway comes before this Court on collateral attack and not on direct appeal. Where "mere statutory violations are at issue," as here, the Supreme Court has recently held that § 2255 can only avail a petitioner if the alleged error spawned a " 'fundamental defect which inherently results in a complete miscarriage of justice.' " *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)) (other citations omitted). Federal courts lack the power under § 2255 to rectify errors that fall short of "vitiat[ing] the sentencing

court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir.1993) (holding that § 2255 does not authorize federal courts to re-examine petitioner's conviction in light of newly discovered evidence). As we stated in *Bontkowski v. United States*, "non-constitutional errors which could have been raised on appeal but were not, are barred on collateral review—regardless of cause and prejudice." *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988).

 Having noted this basic requirement for § 2255 petitions, we examine the specifics now before us. Mr. Broadway claims that insufficient evidence supported his conviction for carrying the gun "in relation to" the drug trafficking, as the statute requires. "The presence of a weapon must be more than accidental or coincidental," his petition correctly maintains, and the direct evidence against him on this point was only that the gun was in his pocket. Mem. Pet. Hab. Corp. at 3–4. Without additional evidence, Mr. Broadway urges, "no inference can arise that the pistol played even the slightest role in assisting Broadway in a drug trafficking crime." *Id.* The same reasoning animates his attack on the jury instruction. The statute requires that the defendant be using or carrying the gun "during and in relation to" the drug trafficking. The jury instruction omitted the words "in relation to" and said only that the jury must determine whether "the defendant was carrying a firearm during the commission of the [drug trafficking charge]." Mr. Broadway argues that the jury instruction therefore called for the jury to find "mere possession of the pistol" and no more. *Id.*

Following *Bontkowski, supra*, we ask whether Mr. Broadway could have raised these two arguments on appeal. In other words, is Mr. Broadway barred procedurally from raising these arguments under § 2255? The answer is yes. Both arguments (insufficiency of evidence and flawed jury instructions) center around the words "in relation to" in § 924(c)(1). Both have nothing to do with Bailey, which left "the interpretation of . . . the 'in relation to' requirement[ ] untouched." *United States v. Cotton*, 101 F.3d

52, 56 (7th Cir.1996). Mr. Broadway attempts to bolster these arguments by invoking *Smith v. United States,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), although the district court made no mention of Smith in granting his petition. Yet Smith, too, is inapposite. There, the Supreme Court held that a defendant who used a firearm to barter for drugs fit § 924(c)(1)'s "in relation to" requirement. Smith teaches only that the phrase "in relation to" necessitates that the gun's "presence or involvement cannot be the result of accident or coincidence." *Id.* at 238, 113 S.Ct. at 2059. This holding did not change the law with respect to Mr. Broadway's carrying a gun in the midst of his drug dealing.

Mr. Broadway identifies no reason why he could not have raised these arguments on direct appeal. They must founder as procedurally barred under § 2255. Mr. Broadway says that no evidence showed that he was carrying the gun "in relation to" his drug trafficking, but insufficient evidence was a matter for direct appeal. He also says that the jury instruction was fatally flawed. Yet he did not object to the instruction at trial, nor does he explain why this would not have been a proper matter for direct appeal. Section 2255 does not enable petitioners to dredge up every defect they can imagine in their trials. Nor does it allow Mr. Broadway to make these arguments today.

### III. Applicability of Bailey

■ What survives in Mr. Broadway's petition is summed up in the district court's cryptic statement that, somehow, "Bailey is applicable." Dist. Ct. Amended Order. This is the key change in § 924(c)(1) jurisprudence to which petitioner points, if obliquely. If Bailey did change the law in a way that affected whether what he did was even a crime under § 924(c)(1), § 2255 might well offer him relief. *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974); *Reed v. Clark,* 984 F.2d 209, 211–12 (7th Cir.1993).

But Bailey does not offer this service to Mr. Broadway. The *Bailey* Court disposed of the consolidated appeals in a way that highlights the difficulty for Mr. Broadway: it remanded both cases to the D.C. Circuit to assess whether the other, "carry" prong of § 924(c)(1) might apply to the defendants. *Bailey,* —— U.S. at ——, 116 S.Ct. at 509. The Court intended that *Bailey* affect the "use" prong alone. "We granted certiorari to clarify the meaning of 'use' under § 924(c)(1)," Justice O'Connor wrote for the Court, and the Court consistently speaks only of *using* a firearm throughout its opinion, and not of carrying one. *Id.* at ——, 116 S.Ct. at 505, and *passim.* As this circuit has ruled before, *Bailey* interpreted only the "use" prong, and left the "carry" prong untouched. *Cotton,* 101 F.3d at 56; *United States v. Feinberg,* 89 F.3d 333, 340 (7th Cir.1996) ("[T]he Court did not define 'carry' "); *United States v. Booker,* 73 F.3d 706, 709 (7th Cir.1996) ("The Supreme Court noted that its holding does not limit the 'carry' prong of § 924(c)").

Mr. Broadway was convicted not of using a firearm, but of carrying one. Bailey is thus irrelevant. The jury instruction charged that the government must show beyond a reasonable doubt that the "defendant was carrying a firearm during the commission of the [drug trafficking offense]." And the jury's verdict form said, "We, the jury, find the defendant, Michael A. Broadway, guilty of the offense of carrying a firearm during a drug trafficking crime." True, as petitioner says, the indictment did allege that the petitioner "used and carried" a firearm. Yet as the statute requires that a defendant used *or* carried a firearm, the indictment's surplus words could not have redounded to Mr. Broadway's detriment.

To the extent that Bailey has anything to say about the "carry" prong, it cuts against Mr. Broadway's position. The Bailey Court explained its decision partly by noting that interpreting "use" loosely would drain "carry" of any residual meaning. In this narrow context, the Court juxtaposed "use" against "carry":

Under the interpretation we enunciate today, a firearm can be used without being carried, *e.g.,* when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used,

*e.g.*, when an offender keeps a gun hidden in his clothing throughout a drug transaction.

—— U.S. at ——, 116 S.Ct. at 507. The last clause conveys precisely what Mr. Broadway was doing: keeping a gun hidden in his pocket "throughout" his drug trafficking.

Since Bailey, this circuit has decided that, even on direct appeal, where a defendant fell cleanly within a simple definition of "carry"—" 'to move while supporting: TRANS-PORT' "—we will not reverse, despite flawed jury instructions. *United States v. Baker,* 78 F.3d 1241, 1247 (7th Cir.1996) (quoting Merriam–Webster's Collegiate Dictionary 175 (10th ed.1993)). In *Baker,* we upheld the "carry"—prong conviction of a defendant found "transporting a gun in a car within reasonable reach," under his car seat. *Id.* Elsewhere, we have upheld the § 924(c)(1) conviction of extortionists, one of whom was holding a pipebomb in his lap until it prematurely blew up. To paraphrase what we said there: if keeping a gun in your pants pocket does not constitute 'carrying' a gun, "we cannot imagine what would." *Feinberg,* 89 F.3d at 340.

The judgment of the district court is

REVERSED.