**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gregory SHELBY, Defendant–Appellant.**

**No. 96–1665.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1996.

Decided Aug. 11, 1997.

---

ILANA DIAMOND ROVNER, Circuit Judge.

On December 12, 1995, Gregory Shelby pled guilty to possessing with intent to distribute 120 grams of "crack" cocaine and 497 grams of powder cocaine, in violation of 21 U.S.C. § 841(a)(1), and to carrying a firearm during the commission of that crime, in violation of 18 U.S.C. § 924(c)(1). Shelby was sentenced to 295 months of incarceration on the two charges. He preserved for appeal his challenge to the district court's denial of his motion to suppress evidence obtained during a search of his car, and to its finding that the facts of his case supported a conviction under section 924(c)(1). He now brings those matters here, along with two issues relating to his sentence. His arguments lack merit, and we affirm his conviction and sentence.

## I. Background

After being alerted by a confidential informant that Shelby was dealing drugs out of his home, police obtained a warrant to search his dwelling. They executed the warrant on January 13, 1993, and, with the aid of their drug-detecting dog "Champ," discovered $75,590 in cash, three grams of cocaine, two handguns, and 3,000 rounds of ammunition.

Although Shelby was not at home when the officers arrived, he drove by during the search in a blue Oldsmobile Delta 88, which the informant had previously identified as Shelby's car. The informant had also reported that Shelby transported drugs, guns and cash in the rear armrests of the Oldsmobile, although no warrant for a search of the car had been obtained. (Sept. 14, 1995 Tr. at 8, 44.) Officers followed the car and pulled Shelby over after a brief low-speed pursuit. They arrested him and then searched his car. The search was conducted by Chicago Police Officer Peter Bukiri and Alcohol, Tobacco and Firearms Special Agent Wendell Roberts, both of whom testified at the hearing on Shelby's motion to suppress the evidence they found in his car. The officers testified

William D. Shaver (argued), Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Tod M. Urban (argued), Kimberly Higgins, Chicago, IL, for Defendant–Appellant.

that they asked Shelby for permission to search his car before doing so and that he told them to "go ahead." [1] During the search, the officers noted that the rear armrests were slightly askew, which was consistent with the theory, also supported by the informant's report, that the armrests may contain secret compartments. After Champ alerted to the right rear armrest, the officers pried it open [2] to discover two plastic bags containing "crack" cocaine, $20,580 in cash, and a fully loaded .32 caliber Rossi revolver.

## II. Motion to Suppress

Shelby first appeals the district court's denial of his motion to suppress the evidence obtained during the search of his automobile, arguing that the search was executed without a warrant or consent. We review the district court's factual finding that Shelby consented to the search for clear error. *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 999, 136 L.Ed.2d 878 (1997). In so doing, we accord considerable deference to the court's credibility determinations. *Id.*

Although the officers did lack a warrant, both testified at Shelby's suppression hearing that they asked Shelby's permission before searching the car and that he told them to "go ahead." Shelby, by contrast, testified that the officers had not sought his permission and that he had not granted it. The court found that Shelby's credibility was undermined by several inconsistencies between his testimony at the hearing and statements contained in the affidavit he filed in support of his motion to suppress. In the affidavit, Shelby asserted that upon stopping Shelby, Bukiri had threatened him by saying, "I've got your fucking ass now and you're going away for 20 years when I get through with you." At the hearing, Shelby omitted that threat from his account. In addition, Shelby testified at the hearing that he requested an attorney after being stopped, although that assertion was absent from his affidavit. Based on those inconsistencies, the district court chose to credit the testimony of the two officers, each corroborated by the other, over that of Shelby, and found that Shelby had consented to the search. The decision to credit the officers' version over that of Shelby was not clearly erroneous. *See United States v. Baker*, 78 F.3d 1241, 1243 (7th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997).[3]

## III. Section 924(c)(1)

Shelby next challenges his conviction under 18 U.S.C. § 924(c)(1), which provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...." [4] Shelby argues that keeping a gun in a secret compartment in a rear armrest of his car does not constitute "using" or "carrying" for purposes of section 924(c)(1).

In *Bailey v. United States*, — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court considered the "use" prong of section 924(c)(1). The Court rejected a

---

**1.** Officer Bukiri testified that Shelby responded to the question with "go ahead." (Sept. 14, 1995 Tr. at 42.) Officer Roberts testified that Shelby told the officers to "go ahead and look." (Sept. 14, 1995 Tr. at 12.)

**2.** It was later discovered that the compartment had an electronic lock that could be operated remotely by way of a switch contained in the glove compartment. (Dec. 12, 1995 Tr. at 18.)

**3.** Shelby has not argued in the alternative that even if he did consent to the search, his consent did not cover the prying open of armrests. We need not concern ourselves with that question because the search of the armrests was in any event supported by probable cause. The confi-

dential informant, whose statements about the contents of Shelby's house had been corroborated when it was searched, stated that drugs were contained in the rear armrests of the car. Moreover, the officers had probable cause to open the armrests after Champ alerted to them. *United States v. Finke*, 85 F.3d 1275, 1282 (7th Cir. 1996); *United States v. Patterson*, 65 F.3d 68, 71 (7th Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 740, 133 L.Ed.2d 689 (1996).

**4.** Although Shelby pled guilty to the facts underlying his conviction under section 924(c)(1), he preserved his right to appeal on the issue of whether those facts were sufficient to support conviction under the statute.

"proximity and accessibility" test that had been employed by the D.C. Circuit, holding instead that "use" "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." —— U.S. at ——, 116 S.Ct. at 505 (emphasis in original). The Court noted that "active employment" does not include "hiding [the gun] where he can grab and use it if necessary." —— U.S. at ——, 116 S.Ct. at 508. Thus, the Court found that guns locked in a car trunk or a footlocker that was kept in a bedroom closet were insufficient to support convictions under the "use" prong of section 924(c)(1). —— U.S. at ——, 116 S.Ct. at 509. There is no question under *Bailey*, then, that the gun contained in the rear armrest of Shelby's car did not satisfy the "use" prong of section 924(c)(1). Still, aside from making clear that "use" and "carry" are not synonymous, the Supreme Court declined to articulate the proper meaning of "carry," explicitly reserving that question for exploration by the lower court. —— U.S. at ——, 116 S.Ct. at 509.

Our own circuit has had several post-*Bailey* opportunities to consider the "carry" prong of section 924(c)(1).[5] In *United States v. Baker,* defendant Baker was convicted under section 924(c)(1) after 27 grams of "crack" cocaine and a handgun were found in his car following a routine traffic stop. We found that the gun, which was discovered along with the cocaine under the driver's seat of Baker's car, had been within his reach and available for "immediate use." 78 F.3d at 1248. Indeed, the officer had noticed Baker reaching beneath his seat when the officer initially approached the vehicle. 78 F.3d at 1244. We held that "a defendant who transports a gun on his person or within his reach, available for immediate use, during and in relation to a drug trafficking crime may—consistent with *Bailey*—be convicted of carrying a firearm under § 924(c)(1)." 78 F.3d at 1247; *see also United States v. Carraway,* 108 F.3d 745, 754 (7th Cir.1997). We reserved for later decision the question of just how immediate a defendant's access to the

gun must be to constitute "carrying" for purposes of the statute. 78 F.3d at 1247.

In *United States v. Molina,* 102 F.3d 928 (7th Cir.1996), Drug Enforcement Administration agents found cocaine and a loaded semi-automatic pistol in a secret compartment in the defendant's automobile. The compartment was located behind the speaker grille in the wall next to the rear seat on the driver's side of the car. The compartment was covered with a welded steel plate and closed with a hook and electronic latch. We found that keeping a gun along with drugs in this location, in a car driven by the defendant, also constituted "carrying" for purposes of section 924(c)(1). The instant case is nearly indistinguishable from *Molina.* Here, the gun was located along with a quantity of drugs in a secret compartment in the armrest of the rear seat. In both instances, the compartment could be opened remotely via an electronic latch. The only difference from *Molina* is that the compartment in Shelby's car was on the passenger side rather than the driver's side of the back seat. We therefore hold that under *Molina,* the facts of this case do satisfy the "carry" prong of section 924(c)(1).

## IV. Sentencing

█ Finally, Shelby raises two issues relating to his sentence. First, he asserts that the district court erred by imposing a two-level increase for obstruction of justice under Guidelines section 3C1.1, when it was at the same time giving him a two-level reduction for acceptance of responsibility under section 3E1.1. Application Note 4 to Guidelines section 3E1.1 discusses the propriety of applying the two adjustments simultaneously:

> Conduct resulting in an enhancement under 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both sec. sec. 3C1.1 and 3E1.1 may apply.

**5.** *See United States v. Cooke,* 110 F.3d 1288, 1294–1302 (7th Cir.1997) (reviewing post-*Bailey*

"carry" jurisprudence).

The extraordinary case, in other words, is the one in which, having obstructed justice, the defendant still qualifies for acceptance of responsibility. If there were a problem here, then, it would be with Shelby's receipt of the acceptance reduction notwithstanding his receipt of the obstruction enhancement, rather than the reverse. The potentially aggrieved party is therefore the government and not Shelby. Because the government has not appealed, we need not consider the issue further. Shelby has not challenged the obstruction enhancement on any other ascertainable grounds.

 Finally, Shelby contests the district court's enhancement of his offense level from 32 to 38 under the "other relevant conduct" provision of Guidelines section 1B1.3, which was based on the court's finding that Shelby had been involved in the distribution of at least 26 kilograms of "crack" cocaine during the year leading up to his arrest. In reviewing the district court's decision on course of conduct, we look only for clear error, and we defer to the district court's credibility determinations. *United States v. Townsend*, 73 F.3d 747, 751–53 (7th Cir.1996). We will affirm the court's determination so long as it is supported by a preponderance of the evidence. *Townsend*, 73 F.3d at 751.

Shelby challenges the court's determination to the extent that it was based on evidence provided by government witness Anthony Gary. Shelby argues that the court should not have credited that testimony because Gary was a government witness and because his account was not otherwise corroborated. Although Shelby has provided no reason that persuades us to find error in the district court's decision to credit Gary's testimony, Gary's testimony is in any event irrelevant. The district court's finding that Shelby was involved with 26 kilograms of cocaine base did not rest on Gary's testimony, but was consistent with Shelby's own admissions. Whereas Gary testified that Shelby was involved in selling at least five kilograms of cocaine per week, 80% of which was in the

form of "crack" cocaine, Shelby himself admitted that he had bought and sold cocaine for a year and produced approximately one-half kilogram of "crack" cocaine per week. The court's decision to hold Shelby responsible for 26 kilograms of cocaine base was therefore supported by a preponderance of the evidence and was not clearly erroneous.[6]

## V.

The conviction and sentence of Gregory Shelby are AFFIRMED.

---

**6.** Shelby also argues on appeal that the district court erred in sentencing him for possessing with intent to distribute cocaine base rather than powder cocaine. That argument has been waived because Shelby did not raise it before the district court, and our discussion above makes clear that the district court's sentence did not involve plain error.