UNITED STATES of America, Plaintiff–Appellee,

v.

Jorge Sarmiento MOLINA, Defendant–Appellant.

No. 96–2108.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 14, 1996.

Decided Dec. 18, 1996.

Barry Rand Elden, Chief of Appeals, George Jackson, III (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff-Appellee.

Richard R. Mottweiler, Catharine D. O'Daniel (argued), Chicago, IL, for Defendant-Appellant.

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Jorge Molina was convicted on February 16, 1996, following a jury trial of a six count indictment. Count One was for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Counts Two through Five were for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Count Six was for carrying a firearm in relation to a drug trafficking crime, namely Count Five, in violation of 18 U.S.C. § 924(c).[1] On April 25, 1996, Molina was sentenced to eighty months concurrent on each of Counts One through Five and five years for Count Six to run consecutive to the other term, to be followed by a period of supervised release for five years. Molina only appeals his conviction on the Sixth Count and argues that there was insufficient evidence adduced at trial to prove that he was guilty of carrying a firearm during and in relation to a drug trafficking offense within the meaning of 18 U.S.C. § 924(c)(1). We affirm.

**Factual Background**

Molina had been under investigation and surveillance by the Drug Enforcement Administration since at least October 20, 1993. When he was arrested on July 26, 1994, the DEA agents searched his 1989 Chevy Blazer and located a secret compartment underneath the face of the speaker located in the rear seat on the driver's side wall of the vehicle. The officers removed the speaker grill to reveal a welded steel plate with a hook attached to it and an electric latch. Agents Mark Baldwin and Michael Kress manually opened the compartment and found two baggies containing 37.2 grams of 75% pure cocaine and a fully loaded .380 semiautomatic pistol with a round in the chamber located in the bottom of the compartment. The compartment had been cut out into the door and allowed access into the door panel. At the time of the arrest the compartment was opened manually because the agents could not determine how to open it electronically. Agent Baldwin testified, while a prepared video of the Blazer's secret compartment was shown, that the electrical wire from the latch led back to the rear window defroster, which was how the compartment would be electronically opened. (Tr. 183, 186). Baldwin further elaborated that the latch worked similar to a latch that can be

---

1. Originally Count Six also stated that Defendant "used" a firearm, but prior to trial the government submitted an amended indictment and an amended redacted indictment that deleted the term "used."

used to remotely open up a trunk. *Id.* However, none of the agents ever attempted to electronically open the secret compartment located in the Blazer or a similar compartment found in Defendant's 1980 tan Oldsmobile. On cross-examination, Agent Baldwin stated that he did not know whether the electronic latch actually worked. On this basis, Molina contends that the evidence presented by the government was insufficient to show that he carried a firearm during this offense within the meaning of 18 U.S.C. § 924(c).

### Analysis

We review a challenge to the sufficiency of the evidence by viewing the evidence presented at trial in the light most favorable to the prosecution, and will affirm the district court so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gonzalez,* 93 F.3d 311, 319 (7th Cir.1996) (citing *United States v. Baker,* 78 F.3d 1241, 1245 (7th Cir.1996)). In order to establish a violation of § 924(c)(1), the government must prove that a defendant carried or used a firearm during and in relation to a drug trafficking crime. Molina does not challenge the government's proof on the issue of having committed a drug trafficking crime, but instead focuses on whether there was sufficient evidence that he "carried" a firearm during the offense.

Molina argues that we should follow the Sixth Circuit's definition of "carry" from *United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). In *Riascos–Suarez,* the Sixth Circuit held that in order to establish a violation under the "carry" prong of § 924(c)(1) "the firearm must be immediately available for use—on the defendant or within his or her reach." *Id.* The Sixth Circuit stated that mere possession or storage of a weapon is not sufficient. *Id.* On this basis, the Sixth Circuit affirmed the defendant's conviction even though the gun was not on the defendant's person, but rather was protruding from the driver's side console and was within reach. *Id.* at 623, 625.

Molina repeatedly contends that we adopted the Sixth Circuit's definition of "carry" in *United States v. Baker,* 78 F.3d 1241 (7th Cir.1996). (Appellant's Br. at 19). In *Baker,* we affirmed the conviction of the defendant and found that he carried a weapon when it was located under the defendant's seat, with the handle pointing towards the front of the seat, on top of a nylon bag containing crack cocaine. Although we agreed with the Sixth Circuit's holding in *Riascos–Suarez,* we made a significant limitation to that holding in stating:

> *Riascos–Suarez* appears to hold that a defendant may be convicted for carrying a firearm only if the weapon is within the defendant's reach and immediately available for use. While it is certainly true that at some point a defendant's access to a firearm being transported becomes so distant and attenuated that he can no longer be said to be carrying it, we do not decide today how immediate his access must be in order to sustain a conviction under § 924(c)(1). We do not, for example, offer an opinion today on whether a defendant who has drugs and a fully operable and loaded gun locked in the trunk of his car could be convicted under § 924(c)(1) for carrying a firearm. Rather, we hold simply that at least where a defendant is transporting a weapon within his immediate reach, he may be convicted under § 924(c)(1).

*Baker,* 78 F.3d at 1247.

In contrast to the Sixth Circuit's definition of carry, we defined that term in *Baker* to mean "to move while supporting: TRANSPORT." *Id.* (Emphasis in original) (citing Merriam–Webster's Collegiate Dictionary 175 (10th ed. 1993)). "[I]t is the possession of the firearm coupled with the affirmative act of transporting it during and in relation to a drug trafficking crime that precipitates liability under § 924(c)(1)." *Id.* (stating that this definition of carry is consistent with *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)); *compare United States v. Miller,* 84 F.3d 1244, 1258–59 (10th Cir.1996) (holding that when a weapon is in a car, a defendant can be convicted "under the 'carry' prong even without proof the firearm was in effortless reach"), *with*

*United States v. Gonzalez,* 93 F.3d 311, 322 (7th Cir.1996) (stating that the Tenth Circuit may have "adopted a more liberal interpretation of the word 'carry' than our own case law would allow").

Molina also cites to the Ninth Circuit's decision in *United States v. Hernandez,* 80 F.3d 1253, 1258 (9th Cir.1996), where the court reversed a finding that the defendant carried a firearm within the meaning of § 924(c)(1). In that case, there was evidence that the defendant kept a gun locked in a toolbox with drugs in his auto body shop. In *Hernandez,* the Ninth Circuit stated "in order for a defendant to be convicted of 'carrying' a gun in violation of section 924(c)(1), the defendant must have transported the firearm on or about his or her person." *Id.* Molina argues that under the *Hernandez* rationale, his conviction should be reversed because the compartment in which his gun was stored was locked. However, this case is distinguishable from *Hernandez.* Molina's gun was transported by him in his vehicle along with the contraband drugs. In contrast, there was no evidence Hernandez transported the toolbox containing the handgun and drugs on his person, and therefore there was no evidence that Hernandez carried the gun in relation to a drug offense.

Molina additionally devotes a significant portion of his brief to discussing the Supreme Court's decision in *Bailey v. United States,* — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *Bailey* is dispositive only on the definition of "using" a firearm, while Molina was charged with "carrying" a firearm. In *Bailey,* the Court left largely untouched the case law interpreting the meaning of "carry" for purposes of § 924(c)(1), noting only that "[t]he 'carry' prong of § 924(c)(1) ... brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Id.* at —, 116 S.Ct. at 509. The Court further indicated that, "a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction." *Id.* at —, 116 S.Ct. at 507.

Molina refers to the language in *Bailey* which states that "the inert presence of a firearm, without more, is not enough to trig-

ger § 924(c)(1).... A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." — U.S. at —, 116 S.Ct. at 508. This language does not aid Molina's position for two reasons. First, the Supreme Court was only discussing the requisites to be convicted for "use" of a firearm rather than for "carrying." Second, in the present case the gun was carried, which is more than mere presence or storage.

Molina has failed to show how the holding in *Bailey* supports his contention that his conviction on Count Six was invalid. In *Bailey,* one of two defendants was arrested for a traffic offense, and the police found a firearm inside a bag in the locked car trunk. By analogy, the location of a weapon in a locked trunk, as in the *Bailey* case, is much less accessible then the weapon was in the present case. The Supreme Court, after reversing the conviction under the "use" prong of § 924(c), remanded the case to the District of Columbia Court of Appeals to determine if either of the two defendants' convictions could be upheld under the "carry" prong. Since the Supreme Court has not clearly delineated a definition of "carry," the *Bailey* decision does not preclude Molina's conviction.

The question before us is not where the gun was located at the time of arrest, but rather did the defendant *carry* the gun during and in relation to a drug trafficking crime. It does not matter where the gun was at the time of the arrest, if the defendant carried the gun in relation to the drugs at some earlier time. Molina does not contest his conviction for the drug trafficking crime in Count Five, and therefore, at the very least Molina could have been found to have *carried* the firearm in relation to a drug trafficking crime at the time he placed both the gun and cocaine together into the same compartment. Further, Molina did not offer as a defense the proposition that someone else had carried the gun or placed it in the trap with the drugs. Therefore, the placement of the gun in the trap with drugs, in a car which Molina drove, satisfies all of the statutory requirements of § 924(c)(1).

Further, we need not concern ourselves with the question of whether the gun was within immediate reach. Not only was the gun likely carried in relation to the drug trafficking crime at the time that it was placed in the compartment with drugs, but it was also surely carried in relation to the crime when it was transported in a car in the same compartment that contains drugs possessed with the intent to distribute.

In establishing whether a gun, found to have been carried, was carried *in relation to* a drug trafficking crime, if the drugs and gun are together in the same place it is nearly an inescapable conclusion that they satisfy the *in relation to* prong of § 924(c)(1). The relation between the firearm and the drugs—which is, after all, the core of the offense—is best established by their relation to each other, and not by the distance between owner and gun at the moment of arrest. Although in *Baker* we declined to decide whether the presence of a firearm and drugs in the trunk of a car would be sufficient for a conviction under § 924(c)(1), today we state that it would, noting that a gun does not have to be within a defendant's immediate reach. 78 F.3d at 1247. If a firearm and drugs are in the same place, and the gun has been moved at all, such as with a car, then both the carrying and relation prongs have been established even if both the gun and the drugs are locked together in the trunk of the car. If the gun and drugs are found in different locations, for example, a gun in the glove compartment and drugs in the trunk of the car, the relation between the two would be more strained, even if the gun was easily accessible. However, in a situation where the gun is as accessible as the drugs, it may still be possible that the relation could be established (for example, on the hypothesis that after stopping the car, the defendant would take the gun prior to opening the trunk to get the drugs). In the present case since the gun and drugs were in the same compartment and the gun was carried by being transported in the car that Molina drove, he was properly convicted of a violation of § 924(c)(1).

Additionally, the location of the weapon at the time of arrest in a secret compartment that may have opened electronically is not inconsistent with our definition of "carry" as set forth in the *Baker* case. *Baker,* 78 F.3d at 1247. Molina had possession of the firearm and engaged in the affirmative act of transporting it during and in relation to a drug trafficking offense. *Id.* (stating that possession coupled with transportation is sufficient for liability under § 924(c)(1)).

Although we need not conclude that the gun was within Molina's immediate reach, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the loaded weapon was within Molina's reach. Even if the compartment could not be opened electronically, Molina would have still been able to get the gun without having to get out of the car, and at most would have only needed to move or recline his seat backwards. Therefore, not only is Molina's conviction upheld under our definition of "carry," but it could also be upheld under the more narrow Sixth Circuit's definition of "carry" from *Riascos–Suarez,* which we have not adopted.

AFFIRMED.