Luis ARANGO–ALVAREZ,
Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 95–3380.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1997.

Decided Jan. 22, 1998.

Before CUMMINGS, COFFEY, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

In 1988, Luis Arango–Alvarez pleaded guilty pursuant to a written plea agreement to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I) and one count of possessing a firearm in relation to a drug crime in violation of 18 U.S.C. § 924 (Count VI). The district court sentenced Arango–Alvarez to 121 months' incarceration on Count I and the mandatory 60 months' incarceration on Count VI to run consecutive to Count I. Arango–Alvarez did not challenge his convictions or sentence on direct appeal. In 1995, Arango–Alvarez filed a *pro se* motion to vacate, correct, or set aside his sentence on Count VI pursuant to 28 U.S.C. § 2255 based on the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Arango–Alvarez appeals from the district court's denial of his § 2255 motion contending that there was no factual basis for his guilty plea and that he was denied effective assistance of counsel during the plea phase of his action.[1] We affirm.

## I. FACTUAL BACKGROUND

Based on the government's proffer, Arango–Alvarez's testimony at the plea hearing, and Arango–Alvarez's written plea agreement, the facts reveal that Arango–Alvarez was involved in a drug conspiracy to deliver a multi-kilogram shipment of cocaine from Los Angeles to Chicago. After Arango–Alvarez arranged for a drug pick-up in Los Angeles, his co-conspirator, Santos Martinez, agreed to transport the eighteen kilograms of cocaine hidden in a secret compartment of a Mazda RX–7 to Chicago, Illinois. Martinez was stopped for speeding in Nebraska at which time he consented to the trooper's request to search his car. After discovering the hidden compartment containing the eighteen kilograms of cocaine, the trooper arrested Martinez. At that time, Martinez agreed to cooperate with law enforcement officers in their investigation of Arango–Alvarez, and he participated in a controlled delivery of the cocaine and met with Arango–Alvarez and another co-conspirator, Fernando Rodriguez. The police followed Arango–Alvarez and Rodriguez, who were driving in Arango–Alvarez's Nissan. Martinez followed them in the Mazda, which he turned over to Rodriguez. Rodriguez drove the Mazda back to Arango–Alvarez's house while Arango–Alvarez drove the Nissan. Arango–Alvarez, however, parked the Mazda in his garage on Chicago's near northwest side. The police arrested Arango–Alvarez and Rodriguez shortly thereafter. At the time of their arrest, the police found a large gym bag next to the car that contained two .22 semi-automatic pistols with ammunition, as well as a notebook documenting prior drug deals. A fingerprint analysis revealed Arango–Alvarez's fingerprints on the notebook.

Arango-Alvarez acknowledged in his written plea agreement that he conspired to possess cocaine with the intent to distribute it as part of a conspiracy. The plea agreement stated that Arango–Alvarez also "acknowledges that when he was arrested a gym bag containing two .22 semi-automatic pistols was found in the garage near the Mazda; defendant acknowledges that he had control over those pistols." (Plea Agreement para. 5(a)). Arango–Alvarez's written plea agreement also stated:

(b) As charged in Count Six of the indictment, defendant Luis Arango–Alvarez

1. Arango-Alvarez voluntarily dismissed his appeal number 95–3374, based on his return of property claim, pursuant to Federal Rule of Appellate Procedure 42(b).

acknowledges that on July 23, 1988 he actually and constructively used and carried firearms, namely two .22 caliber semiautomotic [sic] pistols, serial numbers 141708 and C70567. These pistols were used and carried in connection with the possession and transportation of what he believed was eighteen kilograms of cocaine. They were found, upon his arrest, in a gym bag near the Mazda which was parked in the garage at 2277 N. Clybourn.

(Plea Agreement ¶5(b)).

After the government proffered specific evidence underlying both the conspiracy and firearm charges at the plea hearing, the district court asked Arango–Alvarez if he disagreed with any part of the recitation of the facts in the government's statement to which Arango–Alvarez replied no. The court also asked Arango–Alvarez if he wanted to add anything to the statement. He replied no. The district court then asked Arango–Alvarez to tell the court in his own words what happened regarding the commission of the crimes. Arango–Alvarez gave a brief narrative regarding Martinez's return from Los Angeles detailing the individual roles played by the other members in the conspiracy. At that point, the district court asked a number of clarifying questions involving the firearm offense:

> THE COURT: When you were arrested, were you carrying a gym bag containing two–22 semi-automatic pistols?
>
> ARANGO–ALVAREZ: No, your Honor.
>
> THE COURT: Where were they?
>
> ARANGO–ALVAREZ: One gun was placed in my car, which my friend had left there. I don't know about any other guns.
>
> THE COURT: What car was it placed in, the one gun?
>
> ARANGO–ALVAREZ: In the Nissan, my car.
>
> THE COURT: In your car?
>
> ARANGO–ALVAREZ: Yes, your Honor.
>
> THE COURT: You knew it was placed there?
>
> ARANGO–ALVAREZ: Yes, your Honor.
>
> THE COURT: When you were arrested, where were the 22 semi-automatic pistols found?

> ARANGO–ALVAREZ: One that I know of, your Honor, was in my car, like at the gas tank when you open the gas tank.
>
> THE COURT: Was that the same car that the cocaine was in?
>
> ARANGO–ALVAREZ: No, your Honor.
>
> THE COURT: Was there a pistol found in the car where the cocaine was in?
>
> ARANGO–ALVAREZ: I don't know.
>
> THE COURT: Do you know?
>
> ARANGO–ALVAREZ: I don't know, your Honor.
>
> THE COURT: Anything else?
>
> ASSISTANT UNITED STATES ATTORNEY: Could we ask him if the gun was under his control, custody and control?
>
> ARANGO–ALVAREZ: One of the weapons, yes, the black 22, it was registered to a friend of mine.

(Plea Hearing Transcript at 21–22). The district court found that Arango–Alvarez entered his plea of guilty knowingly and voluntarily and that his plea was supported by a factual basis pursuant to the requirements of Federal Rule of Criminal Procedure 11(f).

## II. ANALYSIS

■ We review the district court's denial of a § 2255 motion regarding questions of law *de novo* and the court's factual findings for clear error. *Wilson v. United States*, 125 F.3d 1087, 1090 (7th Cir.1997). To succeed on a § 2255 petition, a defendant must demonstrate that the sentence imposed upon him was in violation of the Constitution or the laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. *Scott v. United States*, 997 F.2d 340, 341 (7th Cir.1993).

### A. SECTION 924(c)(1) CONVICTION

■ In his § 2255 motion, Arango–Alvarez asserts that there was an insufficient factual basis in his guilty plea for the district court to find that he "used" or "carried" a firearm during the commission of a drug crime for the purposes of 18 U.S.C. § 924(c)(1). *See Bailey*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472. However, we

must make clear that Arango–Alvarez did not directly appeal his § 924(c)(1) conviction; thus, we are called upon to determine whether he is procedurally barred from bringing his claim collaterally. *Young v. United States*, 124 F.3d 794, 796 (7th Cir.1997). The Supreme Court has articulated that a § 2255 motion is not a vehicle to advance arguments that were not made on direct appeal, especially if the argument relies entirely on a statute. *Reed v. Farley*, 512 U.S. 339, 353–54, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994). An error of law not originally raised on direct appeal may only be brought under § 2255 if the error gives rise to a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). In *Davis,* the Supreme Court articulated that if a new legal development establishes that the conviction for an act is not criminal, the imprisonment for this non-crime is a miscarriage of justice. *Id.* However, "nonconstitutional errors which could have been raised on appeal but were not, are barred on collateral review—regardless of cause and prejudice." *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988) (citing *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969)).

Arango-Alvarez contends that he is incarcerated for actions that fall short of constituting a crime because there was no factual basis for the court to hold that he "used" a firearm within the meaning of § 924(c)(1). In order to establish a violation of § 924(c)(1), the government must establish that the defendant carried or used a firearm during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1). In *Bailey,* the Supreme Court narrowed the definition of "use" under § 924(c)(1), holding that "use" involves the defendant's active employment of a firearm. *Bailey,* 516 U.S. at 141–43, 116 S.Ct. at 505. The *Bailey* Court, however, did not elucidate and explain the meaning of "carry," thereby leaving the "carry" prong untouched. *Broadway v. United States,* 104 F.3d 901, 904 (7th Cir.1997); *United States v. Molina,* 102 F.3d 928, 931 (7th Cir.1996).

Arango–Alvarez's argument based on the "use" prong fails because he pleaded guilty and was convicted of both using and carrying a firearm under § 924(c)(1).[2] The district court articulated that its denial of Arango–Alvarez's § 2255 motion was based on the carry prong of § 924(c)(1). Because Arango–Alvarez was convicted on the "carry" prong, *Bailey* does not undermine the plea and is inapplicable to Arango–Alvarez's § 2255 motion. *See Broadway,* 104 F.3d at 904. Indeed, this court has recently stated that "[i]f the plea of guilty necessarily covers the act of 'carrying' a firearm in relation to a drug offense, then the petitioner will be unsuccessful." *Woodruff v. United States,* 131 F.3d 1238, 1242 (7th Cir.1997). As such, Arango–Alvarez's claim is not a miscarriage of justice, but is at best a non-constitutional error that could have been raised on direct appeal. *See Davis,* 417 U.S. at 346, 94 S.Ct. at 2305. Thus, Arango–Alvarez is barred from collateral review regardless of cause and prejudice.[3]

**2.** We note that the statute is phrased in the disjunctive **or,** as opposed to ArangoAlvarez's indictment and plea agreement which state "use" **and** "carry." *See* 18 U.S.C. § 924(c)(1). A violation of either prong is sufficient under § 924(c)(1). *United States v. Damico,* 99 F.3d 1431, 1434 (7th Cir.1996) (defendant that admitted to both use and carry prongs under § 924(c)(1) had factual basis for guilty plea as to carrying a firearm), *cert. denied,* — U.S. —, 117 S.Ct. 1086, 137 L.Ed.2d 220 (1997); *see also Broadway v. United States,* 104 F.3d 901, 904 (7th Cir.1997) (although indictment stated used **and** carried, statute's requirement of "using" **or** "carrying" was not to defendant's detriment).

**3.** We have previously permitted defendants to collaterally attack their 18 U.S.C. § 924(c)(1) convictions even though the defendants had failed to file a direct appeal. In both instances, the factual basis of the plea agreements failed to support the defendants' convictions. *See Stanback v. United States,* 113 F.3d 651 (7th Cir. 1997); *Lee v. United States,* 113 F.3d 73 (7th Cir.1997).

The factual underpinnings of ArangoAlvarez's guilty plea are more than adequate to support a conviction under the "carry" prong of § 924(c)(1). In his written plea, Arango–Alvarez acknowledged that the pistols were "used and carried in connection with the possession and transportation of what he believed was eighteen kilograms of cocaine." *See United States v. Baker,* 78 F.3d 1241, 1247 (7th Cir.1996) ("carry" means to transport), *cert. denied,* — U.S. —, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997). He also

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

 Next, Arango–Alvarez asserts that he was denied his constitutional right to effective assistance of counsel because his counsel advised him to plead guilty even though there was an insufficient factual basis for his guilty plea. Arango–Alvarez bears a heavy burden to establish an ineffective assistance of counsel claim, as counsel is presumed effective. *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir.1995), *cert. denied,* 516 U.S. 1061, 116 S.Ct. 739, 133 L.Ed.2d 689 (1996). In order to succeed on an ineffective assistance of counsel claim, the defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that this deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 668, 694, 104 S.Ct. 2052, 2055, 2068, 80 L.Ed.2d 674 (1984). To show that counsel's performance is deficient, the defendant must point out and make clear to this court the specific acts or omissions forming the basis of his claim. *Trevino,* 60 F.3d at 338 (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066). We then determine whether, under all the circumstances, these alleged acts or omissions were made outside the wide range of professionally competent assistance. *Id.* A reasonably competent attorney considers the facts and legal consequences of the guilty plea and communicates this analysis to the defendant. *United States v. Barnes,* 83 F.3d 934, 939 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996). To demonstrate the *Strickland* prejudice prong in the context of a guilty plea, the defendant must show there was a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

 Arango-Alvarez's claim that his counsel was ineffective is based on the district court's questioning at his plea hearing. At the hearing, the district court asked Arango–Alvarez concise questions concerning his version of the events underlying the firearm offense. During this questioning Arango–Alvarez admitted that there was a gun in his car, a Nissan, which was not the Mazda RX–7 in which the police located the cocaine after the controlled buy. When Arango–Alvarez was asked whether the pistols were under his custody and control, he stated that a black .22 pistol was. Arango–Alvarez also stated that he did not know where the gym bag with the pistols was located at the time of his arrest and that he did not know if there was a pistol in the car containing the cocaine. Alternatively, the government's proffer indicated that at the time of Arango-Alvarez's arrest, the police found a large gym bag next to the car that contained two .22 semi-automatic pistols with ammunition, as well as a notebook listing notations of prior drug deals. Also, as pointed out earlier, a fingerprint analysis revealed Arango–Alvarez's fingerprints on the notebook. Arango–Alvarez contends that the variances between the government's proffer and the plea agreement as compared to his hearing testimony indicate that counsel did not inform him of the underlying facts of his plea.

From our review of the record, it is evident that Arango–Alvarez's counsel did take into consideration the facts underlying the guilty plea and the legal consequences and communicated this analysis to Arango–Alvarez. The district court conducted a very careful plea colloquy pursuant to Federal Rule of Criminal Procedure 11. Through the district court's thorough questioning and Arango–Alvarez's answers, it was established that Arango–Alvarez: (1) had an adequate opportunity to discuss the change of plea with his attorney; (2) was satisfied with the advice and efforts of his attorney; (3) had an opportunity to read and discuss the indictment with his attorney; and (4) understood the charges against him. The district court

---

admitted in his plea agreement that when he was arrested a gym bag containing two .22 semi-automatic pistols was found and that he had control over these pistols. *See United States v. Molina,* 102 F.3d 928, 931 (7th Cir.1996). In *Molina,* this court defined "carry" under § 924(c)(1), narrowing the issue to whether the

defendant carried the firearm during and in relation to a drug crime, not where the firearm was located at the time of arrest. *Id.* This court reasoned that "[i]t does not matter where the gun was at the time of the arrest, if the defendant carried the gun in relation to the drugs at some earlier time." *Id.*

further established that Arango–Alvarez had read and discussed the plea agreement with his counsel. On the other hand, Arango–Alvarez fails to set forth any concrete evidence that his counsel failed to inform him of the facts underlying his plea. We are convinced from the record that counsel did in fact take into consideration the facts and legal consequences of the plea and advised Arango–Alvarez of this information.

■ In addition, Arango–Alvarez's assertion that he had control and custody of a .22 semi-automatic pistol substantiates the facts admitted in his guilty plea. Even though he also asserts that he did not know where the gym bag containing the drugs was located at the time of his arrest or if there was a gun in the Mazda RX–7, these assertions do not invalidate his plea. Arango–Alvarez is not required to acknowledge the truth of all of the facts essential to his guilty plea; he is only required to admit to the facts sufficient to establish a guilty plea in the eyes and judgment of the judge for a factual basis to be established under Rule 11(f). *See United States v. Davis,* 516 F.2d 574, 577 (7th Cir. 1975); *see also United States v. Ivory,* 11 F.3d 1411, 1415 (7th Cir.1993). The district court may find the factual basis of a guilty plea from anything in the record, including the government's proffer. *Ivory,* 11 F.3d at 1415. Also, after the government's proffer, Arango-Alvarez agreed with the government's statement. Because we are convinced from our review that Arango–Alvarez's counsel did inform him of the factual basis and legal consequences of the guilty plea and that Arango–Alvarez's assertions at the plea hearing did not invalidate his guilty plea, he has failed to fulfill the first *Strickland* prong, that is, his counsel's performance was deficient.

Even were we to assume that ArangoAlvarez's counsel gave deficient advice, this fact alone does not establish constitutionally ineffective assistance of counsel; Arango–Alvarez must demonstrate that the errors prejudiced his right to a fair trial. *Banks v. Hanks,* 41 F.3d 1187, 1189 (7th Cir.1994). Arango–Alvarez contends that at the time of the trial judge's questioning the objectively reasonable course of action would have been for counsel to withdraw the guilty plea or stop the proceeding and confer with him.

Arango–Alvarez fails to elucidate why this would be an objectively reasonable course of action nor is there any indication in the record or case law that suggests that counsel must take such actions under these circumstances. Arango–Alvarez further argues that had counsel given him the opportunity to make an informed decision about whether to go to trial or to plead guilty, he would have gone to trial. However, after the district court's thorough questioning at the plea hearing, Arango–Alvarez fully admitted to the facts as charged and knowingly and voluntarily pleaded guilty. There is nothing in the record indicating that his guilty plea must be set aside. Merely alleging that he would have insisted on going to trial is insufficient to establish prejudice under the *Strickland* standard. *Barker v. United States,* 7 F.3d 629, 633 (7th Cir.1993), *cert. denied,* 510 U.S. 1099, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994). Arango–Alvarez's assertion that he would go to trial is insufficient for this court to assess the probabilities of whether Arango–Alvarez would indeed have gone to trial. *See Banks,* 41 F.3d at 1189–90. We conclude that Arango–Alvarez has failed to establish prejudice under the *Strickland* standard. Thus, Arango–Alvarez has not fulfilled the heavy burden that he was deprived his constitutional right to effective assistance of counsel.

AFFIRMED.