**John Westley WILSON, Petitioner–Appellant.**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 97–1215.

United States Court of Appeals, Seventh Circuit.

Submitted June 13, 1997.*

Decided Sept. 25, 1997.

---

* This successive appeal has been submitted to the same panel under Operating Procedure 6(b). After an examination of the briefs and the record, we have concluded that oral argument is unnec-

essary; accordingly, the appellant's request for oral argument is denied and the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a); Cir. R. 34(f).

Ellen R. Kordik (submitted on briefs), Gregory Vamos, Jenner & Block, Chicago, IL, for Petitioner–Appellant.

W. Charles Grace, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Respondent–Appellee.

Before CUMMINGS, COFFEY, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

On November 28, 1989, a jury convicted John Westley Wilson of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Wilson was sentenced to a term of 41 months' imprisonment on the possession conviction and 60 months' imprisonment on the using or carrying a firearm offense, the terms to be served consecutively. He also received a three year term of supervised

release on each offense, to run concurrently, and a $50 assessment on each count. On appeal we affirmed the convictions finding that the inventory search of the car that Wilson was arrested in was lawful, and that he "used" the firearm in violation of § 924(c) making it unnecessary for us to determine whether he had also "carried" the firearm. *United States v. Wilson,* 938 F.2d 785 (7th Cir.1991).

In March 1996, Wilson filed a motion for habeas corpus pursuant to 28 U.S.C. § 2255, arguing that the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), required that his conviction under 18 U.S.C. § 924(c) be vacated. The district court denied his motion, finding that even though the facts of the case did not support a determination that Wilson "used" the firearm as that term is defined in *Bailey,* they did establish that he "carried" the gun in violation of § 924(c)(1). Wilson appeals the district court's denial of his motion for habeas relief. We affirm.

## I. BACKGROUND

The facts are undisputed. On August 19, 1989, at approximately 2:00 p.m., Wilson was driving a car with only one license plate, in violation of Illinois law, and was stopped by Illinois State Trooper Thomas Oliverio. After a routine check of Wilson's driver's license revealed that he had an outstanding arrest warrant for a battery, he was arrested and placed in the squad car. Trooper Oliverio, along with another state trooper dispatched to the scene to provide assistance, inventoried the contents of the vehicle pursuant to the dictates of Illinois State Police Tow–In Policy and Procedure. While conducting the inventory of the trunk, the officers discovered a light plastic bag with a green design containing a shoulder holster with a loaded nine millimeter automatic pistol registered to Wilson with 15 rounds of ammunition in the magazine. *Wilson,* 938 F.2d at 787. Directly underneath this bag the officers found a blue duffel bag with two scales in it, nine individually wrapped plastic bags containing cocaine, and additional plastic bags. After discovering the drugs, Trooper Oliverio advised Wilson of his *Mi-*

*randa* rights, which he orally waived. Oliverio then began to question him about the contents of the trunk and Wilson admitted that he owned the gun and had been hired to deliver the cocaine to a third party in Murphysboro, Illinois.

On August 25, 1989, a grand jury returned a two-count indictment charging Wilson in Count One with possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and Count Two with using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). On October 27, 1989, Wilson's counsel filed a motion to suppress the evidence found in the automobile and to suppress the incriminating statements he made after waiving his *Miranda* rights. The district court denied his motion, finding that the search was an inventory search, thereby excepted from the requirements of the Fourth Amendment, and that his statements were lawfully obtained. At trial a jury found Wilson guilty of both charges and the district court sentenced him. On direct appeal we affirmed Wilson's convictions. *United States v. Wilson,* 938 F.2d 785 (7th Cir.1991). After the *Bailey* decision, Wilson filed a motion for habeas corpus pursuant to 28 U.S.C. § 2255, arguing that it required that his conviction under 18 U.S.C. § 924(c) be vacated. The district court denied the motion, finding that although Wilson did not "use" the firearm as that term is defined in *Bailey,* he did "carry" the gun in violation of § 924(c)(1). Wilson appeals the district court's denial of his motion for habeas relief.

The district court properly found and the government agrees that the facts of this case do not support a determination that Wilson "used" a firearm in violation of § 924(c)(1) within the meaning of *Bailey.* In *Bailey,* the Supreme Court rejected the notion that mere possession is sufficient to satisfy the "use" prong of § 924(c) and stated that to meet this standard a defendant must have "actively employed the firearm during and in relation to the predicate crime." *Bailey,* —— U.S. at ——, 116 S.Ct. at 509. The Court described "active employment" as including "brandishing, displaying, bartering, striking with, and most obviously, firing or attempt-

ing to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. The question is whether the facts demonstrate that Wilson "carried" the gun in relation to a drug trafficking crime in violation of § 924(c).

Wilson sets forth four separate reasons why he believes that he should not have been convicted of "carrying" the gun in violation of § 924(c)(1). He argues that: (1) pre-*Bailey* and post-*Bailey* decisions from this circuit, as well as other circuits, do not support a finding that he "carried" the firearm; (2) he merely possessed or stored the firearm, as opposed to "carried" it; (3) the legislative history to § 924(c)(1) illustrates that Congress intended for the term "carry" to cover only those situations where a firearm is on a defendant's person or in a readily accessible location at the time of arrest; and (4) the district court's analysis was flawed because it solely relied on facts bearing on the "during and in relation to" element of the offense.

## II. DISCUSSION

A. *Definition of "Carrying" with Respect to § 924(c)(1)*

"In reviewing a district court's denial of a § 2255 motion, we consider all questions of law de novo and review all factual determinations for clear error." *Bond v. United States,* 77 F.3d 1009, 1012 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 270, 136 L.Ed.2d 194 (1996).

Initially let us analyze the meaning of the term "carries" with respect to § 924(c)(1).[1] Wilson argues that the term "carries" requires that the firearm be on the defendant's person, within immediate reach, or readily accessible. In support of this assertion he refers to the legislative history of § 924(c)(1) and gives quotes from several legislators that make apparent that the term "carrying" should apply when a defendant has a firearm on their person. (Appellant's Br. at 2526.) However, we are not convinced that these statements indicate that Congress intended to limit "carrying" to solely that situation when a weapon is on the person.

It is a well-established principle that " '[c]ourts must presume that *a legislature says in a statute what it means and means in a statute what it says there.*' " *Baker v. Runyon,* 114 F.3d 668, 670 (7th Cir.1997) (emphasis added) (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992)); *see also Morse v. Republican Party of Virginia,* —— U.S. ——, —— n. 18, 116 S.Ct. 1186, 1234 n. 18, 134 L.Ed.2d 347 (1996) (Thomas, J., dissenting) ("We are not free to construe statutes by wondering about what Congress 'would have wanted to enact.' There are myriad reasons why measures that 'a Congress' … might 'wan[t] to enact' never become law. We must look to the extant text of the statute and see what Congress has in fact, and not in theory, enacted."); *West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 98, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991) ("[T]he purpose of a statute includes not only what it sets out to change, but also what it resolves to leave alone. The best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President." (citation omitted)).

■ In fact, Congress failed to define the term "carries" for purposes of § 924(c)(1). In situations where Congress fails to define a statutory term a court should "construe it in accord with its ordinary or natural meaning," *Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993), and "*only the most extraordinary showing of contrary intentions from [legislative history] would justify a limitation on the 'plain meaning' of the statutory language.*" *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) (emphasis added). We have previously stated that the term "carry" means "to move while supporting: TRANSPORT." *United States v. Baker,* 78 F.3d 1241, 1247 (7th Cir.1996) (emphasis in original) (citing Merriam–Webster's Collegiate Dictionary 175 (10th ed.1993)), *cert. denied,* —— U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997). Webster's Third

---

1. Section 924(c)(1) provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime … uses or carries a fire-

arm, shall, in addition to the punishment for such crime … be sentenced to imprisonment for five years…."

New International Dictionary of English Language Unabridged 343 (1986) defines "carry" as, "1: to move while supporting (*as in a vehicle* or in one's hands or arms) . . . ."(emphasis added). "[I]t is the possession of the firearm coupled with the affirmative act of transporting it during and in relation to a drug trafficking crime that precipitates liability under § 924(c)(1)." *Baker,* 78 F.3d at 1247; *see United States v. Molina,* 102 F.3d 928, 930 (7th Cir.1996).

## B. *"Carrying" Conviction Does Not Require a Weapon to be Within Immediate Reach*

■ Wilson points out that the district court's reasoning for denying his § 2255 motion focused on the "during and in relation to" analysis from our opinion affirming his conviction on direct appeal.[2] *Wilson,* 938 F.2d at 791. Although, the district court did not specifically address the "carrying" aspect of the offense, it explicitly answered in the affirmative the question we left open in *Baker*: "whether a defendant who has drugs and a fully operable and loaded gun locked in the trunk of his car could be convicted under § 924(c)(1) for carrying a firearm." *Baker,* 78 F.3d at 1247.

The district court, having denied Wilson's § 2255 motion one month *prior* to the issuance of our opinion in *Molina,* thus did not enjoy the benefit of that decision. Now, more than one year later, *Molina* controls our analysis, and is therefore deserving of further colloquy. In *Molina,* we considered whether an individual who transports a firearm and drugs, after having placed them together in the same remote, hidden compartment of his vehicle, had "carried" a gun during and in relation to a drug trafficking

crime. *Molina,* 102 F.3d at 931. We *unanimously* concluded that such conduct satisfied the statutory elements of § 924(c)(1), including its "carrying" requirement, because "at the very least [the defendant] could have been found to have *carried* the firearm in relation to a drug trafficking crime at the time he placed both the gun and cocaine together in the same compartment." *Id.* We went on to explain that the

> gun does not have to be within a defendant's immediate reach [to be carried]. If a firearm and drugs are in the same place, and the gun has been moved at all, such as with a car, then both the carrying and relation prongs have been established even if both the gun and the drugs are locked together in the trunk of the car.

*Id.* at 932 (emphasis added) (citation omitted). This Court has since twice occasioned to *unanimously affirm Molina.* *See Young v. United States,* 124 F.3d 794 (7th Cir.1997); *United States v. Shelby,* 121 F.3d 1118 (7th Cir.1997).

Our holdings in *Molina* and its progeny by no means stand alone; in fact, this Circuit is now in the majority of those which have heretofore considered, and answered in the negative, the question of whether immediate access to a firearm is necessary to satisfy § 924(c)(1)'s "carrying" requirement. *See United States v. Cleveland,* 106 F.3d 1056, 1067, 1068 (1st Cir.1997) ("[A] firearm need not always be instantly accessible in order to be carried 'during and in relation to' a drug trafficking crime. . . . [T]he distinguishing characteristic of 'carry' is not the instant availability of the item carried, but the fact that the item is being moved from one place to another by the carrier, either personally or with the aid of some appropriate vehi-

2. The district court stated:
 In its decision on direct appeal in this case, the Seventh Circuit characterized the placement of the gun and drugs as follows: "The defendant's gun . . . was strategically located directly on top of the bag containing the cocaine and the defendant knew where the gun was and it was loaded and readily accessible for use if necessary should any problems arise during the drug transaction." 938 F.2d at 791. Furthermore, the Court of Appeals stated:
 The government's evidence that the defendant's gun was strategically placed on top of

the bag containing the cocaine clearly established the necessary relationship between the defendant's gun and the drug trafficking offense for purposes of § 924(c). Thus, the jury could reasonably infer that the presence of the defendant's gun directly on top of the bag containing the cocaine was linked to his drug trafficking participation in light of the fact that he was on his way to deliver the drugs.
(R. 6, District Court Mem. and Order of November 6, 1996, at 3 (quoting *Wilson,* 938 F.2d at 791).)

cle."); *United States v. Muscarello,* 106 F.3d 636, 639 (5th Cir.1997) ("[W]hen a vehicle is used, 'carrying' takes on a different meaning from carrying on a person because the means of carrying is the vehicle itself." It is, therefore, a "rarity" for a "vehicle-contained gun to be *carried* 'during' but *not* necessarily 'in relation to' the offense." (quotation omitted)); *United States v. Mitchell,* 104 F.3d 649, 653–54 (4th Cir.1997); *United States v. Miller,* 84 F.3d 1244, 1258–59 (10th Cir.1996) (The Government need not prove that a gun was " 'in such proximity to make it immediately available for use' " because " '[t]he means of carrying is the vehicle, itself, rather than the defendant's hands or pocket.' " (quoting *United States v. Cardenas,* 864 F.2d 1528, 1535–36 (10th Cir.1989))), *overruled on other grounds by United States v. Holland,* 116 F.3d 1353 (10th Cir.1997). Moreover, "[o]ther circuits, while not explicitly deciding the issue one way or the other, appear to be leaning toward adopting the same approach." *Cleveland,* 106 F.3d at 1067 (citations omitted).

Three of our sister-circuits, on the other hand, have seen fit to impose an "immediate accessibility" condition on the satisfaction of § 924(c)(1)'s "carrying" prong. *See United States v. Cruz–Rojas,* 101 F.3d 283, 285–86 (2d Cir.1996) ("[W]e cannot determine whether the gun was, in fact, accessible. Therefore, we cannot affirm the conviction against either defendant on a carrying theory."); *United States v. Hernandez,* 80 F.3d 1253, 1257–58 (9th Cir.1996) ("[I]n order for a defendant to be convicted of 'carrying' a gun in violation of section 924(c)(1), the defendant must have transported the firearm on or about his person."); *United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.) ("[I]n order for a defendant to be convicted of carrying a gun in violation of section 924(c)(1), the firearm must be immediately available for use—on the defendant or within his or her reach."), *cert. denied,* — U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). Interestingly, each of these circuits failed to consider what we thought was obvious in *Molina;* namely, that an individual can "carry" a firearm within the meaning of § 924(c)(1) "at the time he place[s] both the gun and [drugs] together into the same com-

partment." *Molina,* 102 F.3d at 931. As Judge Easterbrook recently explained in *Young:*

> [The defendant] satisfies the most restrictive possible definition of "carrying"—having a weapon on one's person ("packing a gun"). He carried the gun to the car. He also carried the gun in the looser sense of transportation. He moved the gun from apartment to car, and the car transported [the defendant], gun, and drugs to the delivery location. The self-protection motive establishes the relation between drugs and gun. *If on arriving at the scene [the defendant] had thrown the gun down a sewer, or locked it in the trunk, before delivering the drugs, this would not have mattered; the crime had been committed.*

*Young,* 124 F.3d at 801 (emphasis added). We disagree with and cast aside the "immediate access" theory as espoused by the Second, Sixth and Ninth Circuits, and have little trouble drawing the logical inference between the presence of a firearm and drugs in an automobile, wherever they might be located therein, and the necessity for its operator to have "carried" the firearm to that vehicle. Indeed, our § 924(c)(1) "carrying" analysis is not confined to scrutinizing the lone act of transporting guns in the course of drug trafficking; that would be much too narrow of a inquiry. Rather, we are also free to consider what occurred, or what logically must have occurred, just prior to such transportation.

Prior to *Molina,* the Seventh Circuit had left unanswered the question of whether a firearm must be readily accessible or within immediate reach. *Baker,* 78 F.3d at 1247. None of the cases from our circuit cited by Wilson support his assertion that a defendant cannot be convicted for "carrying" a firearm if it is beyond his immediate reach. In fact the post-*Bailey* case that he relies on, *United States v. Damico,* 99 F.3d 1431, 1435 (7th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1086, 137 L.Ed.2d 220 (1997), merely stated that prior to *Bailey* the argument was available "that a firearm is not 'carried' if only transported in the trunk of an automobile," and that he had waived this argument

by admitting that his co-conspirator "carried" the firearm during and in relation to the underlying crime of violence. *Id.* (citing *United States v. Edun,* 890 F.2d 983, 988 (7th Cir.1989) (reserving question of whether "carrying" would apply to weapon located in trunk of an automobile)); *see Baker,* 78 F.3d at 1247 (same as in *Edun*).

In *Molina,* we affirmed the defendant's conviction for "carrying" a firearm in relation to a drug trafficking offense where he drove a car that contained drugs and a gun located in a "secret compartment underneath the face of the speaker located in the rear seat on the driver's side wall of the vehicle." *Molina,* 102 F.3d at 929. The reasoning in *Molina* sets forth two distinct bases for finding that Wilson "carried" a firearm in violation of § 924(c)(1).

First, we held in *Molina* that "[i]f a firearm and drugs are in the same place, and the gun has been moved at all, such as with a car, then both the carrying and relation prongs have been established...." *Id.* at 932. Wilson asserts that he did not "carry" the firearm, but rather merely possessed or stored it. This argument, while quite creative, is less than convincing for it is based not only on his mistaken belief that a weapon must be within immediate reach but also the Supreme Court's statement in *Bailey* that: "A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession." *Bailey,* —— U.S. at ——, 116 S.Ct. at 508. However, this statement does not aid Wilson's position because in *Bailey* the Supreme Court solely addressed the definition of "use" and we are addressing the "carrying" prong in this case. Additionally, Wilson transported the weapon when he drove his car. *See Young,* 124 F.3d at 796 ("*Bailey* concerned only the 'use' element of § 924(c)"); *Stanback v. United States,* 113 F.3d 651, 658 (7th Cir.1997) ("nothing in *Bailey* altered what we had previously understood 'carry' to mean for purposes of section 924(c); *Bailey*'s analysis is restricted to the companion term 'use.' "); *Molina,* 102 F.3d at 931 (same); *United States v. Cotton,* 101 F.3d 52, 56 (7th Cir.1996) (same). In this case, the "carrying" aspect of the offense is clearly established because, consistent with the definitions given above and accepted by this circuit, "the gun was *carried by being transported* in the car that [Wilson] drove." *Molina,* 102 F.3d at 932 (emphasis added); *see United States v. Cooke,* 110 F.3d 1288, 1295, 1297 (7th Cir.1997) (defining "carrying" to mean "to move while supporting: TRANSPORT." (emphasis in original)); *Broadway v. United States,* 104 F.3d 901, 905 (7th Cir. 1997) (same); *Baker,* 78 F.3d at 1247 (same). It is quite obvious that when Wilson was driving the vehicle and transporting the weapon he was thus "*carrying*" the gun and not just possessing or storing it.

■ The "during and in relation" element of § 924(c)(1) has also certainly been met for "if the drugs and gun are together in the same place it is nearly an inescapable conclusion that they satisfy the *in relation to* prong of § 924(c)(1)." *Molina,* 102 F.3d at 932 (emphasis in original). The "during and in relation to" determination is based on the location of the firearm with respect to the drugs. *Id.* "The relation between the firearm and the drugs—which is, after all, the core of the offense—is best established by their relation to each other, and not by the distance between owner and gun at the moment of arrest." *Id.* In order for a firearm to satisfy the "in relation to" prong of the offense it must at least " 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Smith,* 508 U.S. at 238, 113 S.Ct. at 2059 (quoting *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985)). "This explanation of the 'in relation to' element is valid precedent, unaffected by *Bailey.*" *Cotton,* 101 F.3d at 56. The facts of this case reveal that the gun was located in a plastic bag positioned directly on top of the drugs and therefore Wilson would have had to, at the very least, remove the gun and hold it in order for him to gain access to the drugs. Thus, in this case, just as in *Molina,* the firearm was "surely carried in relation to the crime when it was *transported* in a car in the same compartment that contain[ed] drugs possessed with the intent to distribute." *Molina,* 102 F.3d at 932.

After setting forth the holding in *Molina,* we went on and specifically addressed the factual situation left open in *Baker,* which is currently before the court, that being, when the drugs and gun are located together in a locked trunk. We explained that under the holding of *Molina* a defendant apprehended while driving a car containing a firearm and drugs in the trunk of the car is "carrying" a firearm sufficient for a conviction under § 924(c)(1). *Id.*

C. *A Weapon can be "Carried" Prior to the Time of Arrest for a Conviction Under § 924(c)(1)*

■ The reasoning in *Molina* supports the district court's denial of habeas relief for a second reason. In *Molina,* we stated that it does not matter where the gun is at the time of the arrest because the defendant could still be convicted under § 924(c)(1) if he "carried" the firearm in relation to the drug trafficking crime at some earlier time.

> The question before us is not where the gun was located at the time of arrest, but rather did the defendant carry the gun during and in relation to a drug trafficking crime. It does not matter where the gun was at the time of the arrest, if the defendant carried the gun in relation to the drugs at some earlier time. Molina does not contest his conviction for the drug trafficking crime ... and therefore, at the very least Molina could have been found to have carried the firearm in relation to a drug trafficking crime at the time he placed both the gun and cocaine together into the same compartment. Further, Molina did not offer as a defense the proposition that someone else had carried the gun or placed it in the trap with the drugs. Therefore, the placement of the gun in the trap with drugs, in a car which Molina drove, satisfies all of the statutory requirements of § 924(c)(1).

*Molina,* 102 F.3d at 931. In *Young,* 124 F.3d at 800, we very recently reemphasized the point that the term "carrying" as referred to in "§ 924(c) is not limited to guns being carried at the moment of arrest (or distribution)." In *Young,* we further stated:

> Recasting the point as an argument that he did not "carry" the gun does not assist Young. He did not have the gun on his person when he was nabbed, but § 924(c) is not limited to persons who carry their guns at the moment of arrest. *United States v. Molina,* 102 F.3d 928 (7th Cir. 1996), and *United States v. Shelby,* 121 F.3d 1118 (7th Cir.1997), establish this point. In each of these cases, the police found drugs and a gun together in a "trap"—a secret compartment in the car. In each case the defendant was empty handed when arrested. Nonetheless, we held in each case that the trier of fact could infer that the defendant carried the gun in relation to the drugs at an earlier time, perhaps when the two were placed together into the container, or perhaps when the car transported owner, drugs, and gun simultaneously while the gun remained accessible to one who knew about the trap.
>
> . . . .
>
> Once the defendant has committed all of the elements of the § 924(c) crime, it doesn't matter how securely locked up, or how far away, the gun becomes.

*Young,* 124 F.3d at 799–801.

Wilson disagrees that a "carrying" conviction can be based on a weapon being carried at some time prior to the arrest and relies primarily on *United States v. Jackson,* 103 F.3d 561 (7th Cir.1996), and *Stanback,* 113 F.3d at 657–58, for his contention that in conducting a "carrying" analysis the proper temporal focus is on whether the defendant "carried" the gun at the moment of, or immediately prior to, the defendant's arrest. In reading *Jackson* we have not discovered any language that mandates that the gun must be on the defendant's person or within his immediate reach at the time of arrest in order to be "carried" in violation of § 924(c). Wilson argues that *Stanback* supports his contention, we disagree. In fact, the *Stanback* court explicitly stated that a conviction for "carrying" would be proper if the defendant had admitted that *earlier* during the day of his arrest he had the gun on him while he went to obtain the cocaine. *Stanback,* 113

F.3d at 658. Thus, *Stanback* makes clear that the proper "carrying" analysis is not limited to only the specific period of time when the defendant is placed under arrest.

In *Stanback*, the defendant was arrested in his living room, where a loaded gun, cocaine, and a triple-beam scale were located on top of a makeshift coffee table. Subsequent to his arrest, Stanback pleaded guilty to "using or carrying" a firearm during and in relation to a drug trafficking crime. Following the Supreme Court's decision in *Bailey* he sought habeas relief from the district court, arguing that he neither "used" nor "carried" a firearm in violation of § 924(c)(1). The district court denied him relief and determined that "even if Stanback had not 'used' a firearm in a way that satisfied Bailey, he nonetheless had 'carried' it and thus was properly convicted under section 924(c)." *Id.* at 652. On appeal, we reversed and remanded after concluding that the facts underlying Stanback's plea were insufficient to establish that he had either "used" or "carried" a firearm in violation of § 924(c)(1). With respect to the "carrying" prong we stated that the defendant "may have carried the weapon earlier that evening in connection with his possession and preparation of the cocaine for distribution, but it could also be that he did not." *Id.* at 657. However, we concluded that,

> In view of the very few facts we have in the record, it is equally possible that the gun was placed on the table before Stanback even acquired that cocaine; it is also possible that someone else carried the gun to the table, notwithstanding the fact that the gun belonged to Stanback.

*Id.*

*Stanback* does not hold that the only period in question for a "carrying" conviction is at the time of the arrest. In fact, "[n]one of this circuit's opinions holds that it is impermissible to use evidence gathered at the time of arrest to draw inferences about whether the gun was 'carried' earlier." *Young,* 124 F.3d at 801. A defendant can be convicted of "carrying" a firearm in relation to a drug trafficking crime at some time prior to his arrest, as long as the facts in the record support such an inference. *Id.* at 801 (stating that the "inferential chain [becomes] more problematic" when it is unknown if the defendant carried the gun to the automobile or even knew that the weapon was in the car); *Stanback,* 113 F.3d at 658 ("having admitted to particular facts which on their face reasonably suggest that the firearm was 'carried,' a defendant could not escape his guilty plea simply because there is a theoretical chance that additional unknown facts might cast doubt on that inference.")

On the other hand, this record demonstrates that Wilson not only admitted ownership of the gun but also admitted that he had been hired to deliver the cocaine to a third party in Murphysboro, Illinois. Wilson also stated that "the gun was simply one of the many possessions he was moving back to school." *Wilson,* 938 F.2d at 791. Thus, the facts in the record clearly illustrate that Wilson, by his own admission, was personally engaged in moving his belongings, which included transporting and packing the guns and drugs into the car; in doing so, he would have had to have "carried" the gun in relation to the drug trafficking crime when he conveyed both the drugs and the gun to the car and placed them in the vehicle directly on top of each other in the trunk of his car. In *Young,* we stated that "in the usual case it is likely that the defendant himself put both drugs and gun in the trunk—and, if so, the defendant 'carried' the gun 'during' a drug crime such as possession with intent to distribute." *Young,* 124 F.3d at 802. Furthermore, Wilson has not stated that someone else packed or loaded his car, and it is obvious that the term "moving" includes carrying one's belongings to the vehicle, placing them in the vehicle, and transporting them to another location. Thus, it is clear that Wilson's conviction under § 924(c)(1) could also be sustained on the grounds that he "carried" the weapon in relation to the drug crime when he brought them to the car for packing and placed both items together in his trunk, as well as when he transported them by driving his car. *Stanback,* 113 F.3d at 658; *Molina,* 102 F.3d at 931.

### D. *Authoritative Weight of Molina*

Our decision in *Molina*, decided by a unanimous panel of this court, has neither been the subject of a petition for rehearing nor an application for a writ of certiorari, according to this court's records. However, recently a few judges in this circuit have called into question the authoritative weight that the holding in *Molina* is entitled to receive. *See United States v. Cooke*, 110 F.3d 1288, 1297–98 (7th Cir.1997) (Cummings, J.) (stating that although the *Cooke* panel did not need to consider whether a weapon is "carried" if not within immediate reach, a brief discussion of the issue was warranted in light of statements made in *Molina*); *Id.* at 1302–03 (Diane P. Wood, J., concurring) (stating that *Molina* was in error in holding that a firearm does not need to be in immediate reach in order to be "carried," because the facts did not necessitate answering that question); *Stanback v. United States*, 113 F.3d 651, 658 n. 6 (7th Cir.1997) (Rovner, J.) (stating that the question of whether the firearm must be within immediate reach "remains the subject of debate in this circuit" even after *Molina*); *cf. Shelby*, 121 F.3d at 1121 (upholding *Molina*); *Cooke*, 110 F.3d at 1302 (Coffey, J., concurring) ("*Molina* is the law of this circuit and should be considered binding precedent").

Wilson argues that our holding in *Molina*—that a weapon does not necessarily need to be within immediate reach when transported in a car and that the "carrying" of a gun can occur at some point prior to the time of arrest—is dicta that should not govern the present case. In *Molina*, the gun and drugs were located in a secret compartment in the driver's side backseat speaker, rather than in the trunk of the car. However, we explained that "the presence of a firearm and drugs in the trunk of a car would be sufficient for a conviction under § 924(c)(1)," *Molina*, 102 F.3d at 932, as an example of how the holding would be applied under that situation. Judge Diane P. Wood, in her concurrence in *Cooke*, found fault with the holding in *Molina* and stated that "[n]either *Molina* nor Cooke's case presents facts that require us to resolve the question reserved in *Baker*"—whether gun and drugs locked in the trunk of

a car would be sufficient for a § 924(c)(1) "carrying" conviction. *Cooke*, 110 F.3d at 1303 (Diane P. Wood, J., concurring). Judge Diane P. Wood's characterization of our *Molina* holding as dicta stems from a statement in the final paragraph of *Molina* which stated, "a rational trier of fact could have found beyond a reasonable doubt that the loaded weapon was within Molina's reach." *Cooke*, 110 F.3d at 1303 (Diane P. Wood, J., concurring) (quoting *Molina*, 102 F.3d at 932). This language, when considered in isolation, misrepresents the holding in *Molina*, as it was nothing but an additional reason for affirming the conviction and was qualified with the clear, concise, and unambiguous language that "we need not conclude that the gun was within Molina's immediate reach [in order to decide the case]." *Molina*, 102 F.3d at 932.

 Our *Molina* holding stated that a firearm need not be within a defendant's immediate reach when transported in a car for him to be convicted of "carrying" a firearm in violation of § 924(c), and that a gun can be "carried" at some time prior to the arrest for a defendant to be convicted of "carrying" a firearm in relation to a drug trafficking crime. In the case before us, once again, we hold and affirm our prior ruling that when a gun is transported in a vehicle it need not be within the immediate reach of a defendant to satisfy the "carrying" prong of § 924(c)(1) and also a person can be convicted under § 924(c)(1) if he "carried" the firearm at some time prior to his arrest, such as earlier that day. Therefore, it bears repeating that a gun does not need to be within immediate reach for a conviction pursuant to the "carry" prong of § 924(c)(1) when it is transported in a car during and in relation to a drug trafficking crime.

AFFIRMED.